521 P.2d 1136

**STATE of Arizona, Appellee,**

v.

**Dallas RICHIE, Jr., Appellant.**

**No. 2762.**

Supreme Court of Arizona,
In Division.

May 16, 1974.

Rehearing Denied June 11, 1974.

Gary K. Nelson, Atty. Gen., Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Nile B. Smith, Phoenix, for appellant.

LOCKWOOD, Justice:

Defendant, Dallas Richie, Jr., appeals from a judgment entered upon a jury verdict of guilty to the charge of armed robbery, and from his sentence of from ten years to life.

The facts indicate that on the night of December 1, 1972, Richard Wood was working late at the food warehouse which he owned. At approximately 6:30 p. m. he was preparing to leave when he was met outside the doorway of the warehouse and forced back inside by three men. Once inside Wood was severely beaten and robbed.

As a result of the beating the victim had to be hospitalized and was blinded in one eye. Four days after the robbery and while still hospitalized, the victim was given six photographs of suspects, and asked if he could identify anyone. Wood identified three suspects who were eventually charged with the robbery. After picking out the suspects, but prior to the preliminary hearing, Wood was advised by the police that he had chosen the correct pictures and that two of the suspects were already in custody including the defendant. Defendant attempted to suppress the proposed in-court identification by the victim on the grounds that the previous photographic identification was tainted. His motion to suppress was denied and the victim was permitted to make an in-court identification of the defendant. At his trial the defendant testified in his own defense. He maintained that he was innocent throughout the proceedings. After a trial by jury he was found guilty as charged.

The defendant first questions whether the trial court erred in failing to conduct a voluntariness hearing and to make a ruling thereon prior to allowing the state to introduce the defendant's testimony which he gave at a co-defendant's trial.

Defendant testified at the trial as follows:

"A. As we was walking west, Mr. Wood was standing outside his door, about ten feet or more from his door,

and Hogan stated he was going to see if he could get a job."

\* \* \* \* \* \*

"A. Hogan said he was going to see if he could get a job. Hogan went into business; Mr. Wood followed Hogan.

Then John L. went in, and I continued, I went into the gas station which is across the street from the warehouse."

The only reference to the defendant's prior testimony is as follows:

"Q. Do you recall testifying in behalf of [co-defendant] Laborn Hogan in the trial of February 20, 1973?

"A. Yes.

"Q. Do you recall on Page 11, Pages 10 and 11, Line 25, there is a statement,

'Which way were you walking?

'A. West.

'Q. And what happened?

'A. The victim, Richard Wood was standing outside the door on the right-hand side of the door, and Laborn told me to go see if we could get a job.'

"Then you indicated that he went on into the store and you were walking, and you interrupted yourself. Do you recall giving that testimony?

"A. No, sir."

Prior to allowing the defendant to testify at the co-defendant's trial a hearing was conducted in chambers. The record shows that counsel for the defendant Richie was not present at the time. The judge advised Richie at that time that he did not have to testify but that if he did, the testimony could be used against him. Richie stated several times that he wished to testify. It is apparent that he knowingly and voluntarily waived his right to remain silent.

■ In State v. Johnson, 109 Ariz. 70, 505 P.2d 241 (1973) we held that voluntary statements of the defendant were admissible for the purpose of impeachment although the defendant had not been advised of his rights prior to interrogation. In the case at bar there is no question but that

the testimony of the defendant was voluntarily given. Under these circumstances there was no error committed in permitting the state to introduce the defendant's prior inconsistent statements for the purpose of impeachment. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

The same trial judge presided at the trials of defendant Richie and the former trial of the co-defendant Hogan. The trial judge was fully aware of the circumstances regarding the giving of testimony by the defendant at the co-defendant's trial and no separate hearing was held. We know of no mandate requiring a separate hearing for every challenged statement or confession. We hold that where the trial court had already determined that the defendant's testimony had been freely and voluntarily given, there was no need to repeat itself by rendering a second finding two months later.

■ The next contention of the defendant is that it was error for the trial court to deny the defendant's motion for a continuance. On the day of the trial, the defense asked for a continuance "to allow my client to determine who these witnesses are and to allow us to attempt to find the witnesses." Counsel for the defendant was appointed to represent him on December 28, 1972 and the trial did not commence until April 26, 1973. The defendant made no offer of proof nor indication of how he would be prejudiced by their absence. The record is barren of any attempt by the defendant to contact or subpoena them during the four months which counsel and the defendant had to prepare for the trial. This court has held on numerous occasions that the granting of a continuance is solely within the sound discretion of the court and the decision of the court will not be disturbed unless there is a clear abuse of discretion. State v. Benge, 110 Ariz. 473, 520 P.2d 843 (1974); State v. Guthrie, 108 Ariz. 280, 496 P.2d 580 (1972). We can find no abuse of discretion based upon our examination of the record.

The final issue raised by the defendant is that the court erred in denying the motion to suppress the proposed in-court identification of the defendant by the victim. Defendant argues that the police officer's comment that he picked the right men tainted the identification process. Such a comment is supportive of the victim's choice and would lessen or eliminate any doubt which the victim may have had. In State v. Money, 110 Ariz. 18, 514 P.2d 1014 (1973) we agreed that such information may tend to make a witness more certain especially if there were doubts concerning the identification before receiving the information. We went on to hold that where the lineup was not suggestive in the first place, such subsequent comments cannot taint an initially fair identification procedure or the in-court identification. For that reason there was no error in denying the defendant's motion to suppress.

The judgment and conviction are affirmed.

CAMERON, V. C. J., and STRUCK-MEYER, J., concur.