509 P.2d 607

**STATE of Arizona, Appellee,**

v.

**Ernest A. MIRANDA, Appellant.**

**No. 1397–2.**

Supreme Court of Arizona,
En Banc.

May 2, 1973.

Gary K. Nelson, Atty. Gen., by Peter Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

HAYS, Chief Justice.

Ernest Miranda was tried by a jury on September 20, 1971, and convicted of the November 27, 1962, robbery of Barbara Sue McDaniel. Because of the extreme possibility of jury familiarity with his name, he was tried anonymously as Jose Gomez. On this appeal from the robbery conviction, Miranda maintains that the in-court identification by the victim denied him due process of law in violation of his rights under the fourteenth amendment.

The facts are as follows: Barbara Sue McDaniel worked late at the First National Bank in Phoenix on the night of the robbery. As she walked to her car in the parking lot she noticed a man, the defendant, behind her. He asked her for the time after she got into the car. She estimated about 8:45 P.M. and made an unsuccessful attempt to start the car. The defendant opened her door on the driver's side, put his hand over her mouth and told her not to scream if she did not want to get hurt. He drove the car a couple of blocks and parked in the alley behind the credit union. The defendant showed her a knife with a blade six to eight inches long. The two wrestled and fought in the car and the victim pleaded with him to take her car or money and let her go.

Miss McDaniel and the defendant talked for about twenty minutes and discussed a variety of topics, including his religion. Finally, the defendant said, "Well, I will just take your money." The victim gave him $8.00 and some change and the defendant left saying, "I hope this never happens to you again."

Miss McDaniel reported the incident to the police about 10:00 that night. She described her assailant as between twenty-three and twenty-five years old, as between 5'7" and 5'9" tall, and as having a medium complexion and dark hair.

On March 13, 1963, three and one-half months after the robbery, two Phoenix police officers went to Ernest Miranda's house in connection with another case and took him to the station. One of the officers apparently remembered the report in the McDaniel case and decided to present Miranda in a line-up for Miss McDaniel's

viewing. She viewed Miranda in a line-up with three other Mexican-American males at 11:30 A.M. She said she thought the number one man, Miranda, was her assailant. Miranda then confessed to the robbery of Barbara Sue McDaniel, as well as to the crime involved in the *Miranda* warnings case, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Both confessions were held to be inadmissible and are not at issue here. Miss McDaniel was asked to come down to the police station about 1:00 that same afternoon. She and Miranda met in a one-on-one confrontation and she positively identified him as her assailant.

■ Before Miss McDaniel identified the defendant at trial, a hearing out of the presence of the jury was held pursuant to State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969). Evidence of the afternoon one-on-one confrontation was held to be inadmissible on the grounds that the confrontation was so unnecessarily suggestive that to admit it would deny defendant due process of law. Evidence of the morning line-up was held to be admissible. The issue on appeal revolves around whether it was established by clear and convincing evidence that Miss McDaniel's in-court identification was based on a source other than the inadmissible one-on-one confrontation. Six factors to consider in making this determination are suggested by the Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967):

> [T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. 388 U.S. at 241, 87 S.Ct. at 1940.

■ After an analysis of the six *Wade* factors and an examination of the record, we are convinced that the in-court identification had an independent origin. United States v. Ranciglio, 429 F.2d 228 (8th Cir. 1970). The victim in the instant case had an unusually long time to observe the defendant. Although the light was poor, she got a look at the defendant when he stopped to ask for the time, and she and defendant spent some twenty minutes talking in her parked car. The record shows no discrepancy between any pre-lineup description and defendant's actual description. The record shows that Miss McDaniel did not mistakenly identify any other individual prior to identifying Miranda. There is nothing in the record which would indicate that Miss McDaniel ever saw a photograph of Miranda prior to the line-up, nor is there anything in the record to suggest that she ever had an opportunity to identify him before March 13, 1963. Three and one-half months had elapsed between the time of the robbery and the date of the line-up. Although this is a relatively long time, in light of the long time the victim spent with the defendant during the robbery, we can find no error in the trial court's determination that her in-court identification was based on her contact with the defendant the night of the robbery rather than on the improper one-on-one confrontation.

Conviction affirmed.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.